IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RONALD PERCY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-08-282-F |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423.  Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues.  The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  For the following reasons, it is recommended that the Defendant Commissioner's decision be affirmed.

I. Background

Plaintiff filed his application for benefits on November 10, 2003. In this application, Plaintiff alleged that he became disabled on October 6, 2003, due to a skull fracture and low back injury. (TR 75-77, 84).  He described previous work as a self-employed painter. (TR

85).   In a questionnaire completed for the agency, Plaintiff described his usual daily activities as "none" and stated that he was "afraid of being in public now" and also experienced pain every day in his head, back, knee, and lungs. (TR 113).  In April 2004, when contacted by an agency representative, Plaintiff stated that he experienced "nightmares since he was kicked in the head by another person" with whom he was involved in a motor vehicle accident. (TR 104).   Plaintiff stated his wife had always performed all household chores and meal preparation and that he had not sought mental health treatment. (TR 104). On another form completed for the agency in May 2004, Plaintiff described new conditions of "increased anxiety attacks" and "anxiety depression [sic]." (TR 115).  Plaintiff submitted records of medical treatment showing that he was treated in June 1997 by an orthopedic surgeon, Dr. Odor, who diagnosed a degenerative disk at one level of Plaintiff's lumbar spine. (TR 262). Dr. Odor prescribed "proper back mechanics" and a non-steriodal anti-inflammatory medication as treatment. (TR 262).   Plaintiff's records also show that he was treated in October 2003 for injuries received after he was kicked and hit in the face with fists by another individual in an altercation following an automobile accident. (TR 134-136).  A computerized tomographic scan revealed the presence of a fracture of the zygomatic arch, and Plaintiff was treated by the examining emergency room physician for this "closed head injury." (TR 137).  According to the emergency room physician's report, Plaintiff was prescribed pain medication, instructed to see an ear, nose, and throat specialist, and discharged in stable condition. (TR 137).

   Plaintiff's application was denied initially and on reconsideration. (TR 52-53).  At

Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Keltch ("ALJ") on February 15, 2006, at which Plaintiff appeared with counsel and testified. (TR 282-313). Following the hearing, the ALJ issued a decision in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 44-48). The agency's Appeals Council considered additional medical evidence submitted by Plaintiff and denied Plaintiff's request for review of the ALJ's decision. (TR 5-7).

Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination. Plaintiff contends that the ALJ erred in failing to find that Plaintiff had a severe mental impairment and in failing to include mental functional limitations in the residual functional capacity finding. Defendant Commissioner responds that no error occurred with respect to the ALJ's determination and that there is substantial evidence in the record to support the decision.

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely

upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520(b)-(f) (2008); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail). Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. Steps Two and Four - Mental Impairment

Following the required sequential evaluation procedure, the ALJ found at the first step that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of October 6, 2003. (TR 47). At the second step, the ALJ reviewed the medical evidence and found that Plaintiff had severe impairments due to a fracture of the zygomatic bone, shortness of breath, a history of low back pain, degenerative disease of the lumbar spine, and degenerative joint disease (hip region). (TR 44-47). Despite these severe impairments, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level, including lifting 20 pounds occasionally, lifting 10 pounds frequently, standing or sitting up to 6 hours in an 8-hour workday, and no more than occasional stooping. (TR 46-47). Relying on the agency's Medical-Vocational Guidelines, generally known as the "grids," the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act considering his age, educational level, work experience, and RFC for work. (TR 46-48).

Plaintiff contends the ALJ's decision is not supported by substantial evidence in the record because the ALJ did not find the presence of a severe mental impairment at step two or mental functional limitations at step four. At step two, the ALJ must determine "whether the claimant has a medically severe impairment or combination of impairments." Bowen v. Yuckert, 482 U.S. 137, 140-141(1987). This determination is governed by the agency's "severity regulation" at 20 C.F.R. § 404.1520(c). Pursuant to this regulation, the claimant must make a "threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities." Williams v.

Bowen, 844 F.2d 748, 750-751 (10th Cir. 1988). Although the claimant must make only a "de minimis" showing that the medical condition is medically severe, "the claimant must show more than the mere presence of a condition or ailment." Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

At the fourth step of the evaluation process required of administrative factfinders, the ALJ is required to determine whether the claimant retains the RFC to perform the requirements of all past relevant work or, if claimant is found to be unable to perform his or her past relevant work, other work that exists in significant numbers in the economy. At this step, the ALJ must "make findings regarding 1) the individual's [RFC], 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation, given his or her [RFC]." Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993). The assessment of a claimant's RFC necessarily requires a determination by the ALJ of the credibility of the claimant's subjective statements. "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)(footnote omitted).

Plaintiff asserts that he satisfied his burden of showing "mental impairments including depression, headaches, PTSD, anxiety attacks, alcohol abuse and memory problems" that

"could interfere with" his ability to work. Plaintiff's Opening Brief, at 11. The ALJ's decision reflects that the ALJ considered the medical evidence and relied on specific evidence in the record, including the state agency medical consultant's report, in finding that Plaintiff's depression was not a severe impairment and that Plaintiff had no mental limitations affecting his ability to work. (TR 45-46).

The medical consultant, Dr. Fiegel, concluded, based on an examination of the medical evidence, that Plaintiff did not have a severe mental impairment or any functional limitations related to a mental impairment. (TR 179-191). Although Plaintiff occasionally stated to his treating and examining physicians that he was experiencing depression, headaches, anxiety, nightmares related to the October 2003 assault, and memory problems, the evidence as a whole supports the ALJ's determination that Plaintiff's mental difficulties did not significantly limit his ability to work. To be severe, a "mental impairment must be of a nature and degree of severity sufficient to justify its consideration as the *cause of failure to obtain any substantial gainful work*." Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003)(emphasis in original). "A minor impairment of one's memory, which most individuals suffer as they age, does not rule out all substantial gainful activity." Wall v. Astrue, __ F.3d __, 2009 WL 522867 (10th Cir. 2009).

Plaintiff has never sought treatment from a mental health professional. Anti-depressant medication was prescribed for Plaintiff in January 2004 by his treating physician, who noted the medication was prescribed to treat "tension headaches." (TR 239). The agency's consultative examiner, Dr. Maldonado, reported that he observed no active mental

problems during the consultative examination of Plaintiff conducted in February 2004. (TR 169-170). Dr. Maldonado indicated, among other findings, a diagnostic assessment of post-traumatic stress disorder based solely on Plaintiff's subjective statement that he was experiencing "recurring nightmares regarding his encounter during the [October 2003] accident." (TR 170). On June 10, 2004, Plaintiff's treating physician noted that Plaintiff "looks depressed." (TR 215). The physician recommended Plaintiff set up an appointment in his treating clinic's psychiatric department, but there is no record that Plaintiff ever did so. (TR 215). At the Plaintiff's follow-up examination three months later, the physician noted Plaintiff stated the previously-prescribed anti-depressant medication helped his symptoms. (TR 211). On several occasions, Plaintiff reported to treating physicians that anti-depressant medications prescribed by his treating physicians were helpful and that his mood and anxiety had improved. (TR 23, 211, 233). In November 2006, Plaintiff stated to his treating physician that he had been "feeling depressed lately," and he indicated he had been "drinking a lot" as a result of his mother's death and the lack of funds for Christmas. (TR 22). The physician noted he advised Plaintiff to take the previously- prescribed anti-depressant medication and to seek treatment at the clinic's psychiatric unit. (TR 22). At Plaintiff's follow-up appointment three months later, Plaintiff reported to the treating physician that his mood was better. (TR 25). At another follow-up examination three months later in May 2005, Plaintiff complained of memory problems but denied depression. (TR 27). A different anti-depressant medication was prescribed, but no other treatment was recommended. (TR 27). Plaintiff again complained vaguely of "memory problems" at a follow-up examination.

(TR 32). Although the physician noted he recommended Plaintiff undergo magnetic resonance imaging testing of the brain to rule out vascular dementia, the physician did not indicate any testing for or objective findings of memory deficits. (TR 32).

While Plaintiff's wife stated on agency forms completed in August 2004 that Plaintiff was afraid of going out in public because he was afraid of being assaulted again (TR 110-112), there is no record of any similar complaint by Plaintiff to a medical provider. Plaintiff occasionally indicated that he had problems with excessive alcohol use, and he described himself as an "alcoholic" on one occasion to a treating physician. (TR 21-22, 159). However, Plaintiff testified that he and his wife provide care for their small grandsons during the day, and he did not testify that alcohol abuse limited his ability to function or caused him to be unable to work. (TR 300-303). Plaintiff related his headaches to his skull fracture, and not to any mental impairment, during the consultative examination. (TR 169). At the hearing, Plaintiff testified that he took medication for depression, that he was "kind of leery about people walking up around" him, that he had some generalized memory problems with remembering dates and phone numbers, and that the recent loss of his mother and "nightmares" affected his sleeping. (TR 293-294, 296, 299-300). Plaintiff did not indicate that he experienced significant mental symptoms adversely affecting his ability to function or limiting his ability to work, and the medical record is devoid of any evidence of persistent, significant symptoms related to a mental impairment. Accordingly, the ALJ did not err in failing to find that Plaintiff had a severe mental impairment or that mental impairments limited his RFC for work. Because there is substantial evidence in the record supporting the

Commissioner's decision, the decision should be affirmed.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before      April 9th      , 2009, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this    20th    day of    March    , 2009.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE